WILLIAM W. DAVENPORT *vs.* HENRY DAVENPORT & another.

If a bill in equity is brought by the husband and guardian of an insane woman, against the trustee under a marriage settlement, to obtain an order for a contribution from the income of the trust property which is secured to her sole and separate use, to aid in her support, the court will appoint a guardian *ad litem* for her, before hearing the case.

This court has jurisdiction in equity to require the trustee of the property of a married woman who has become insane, the income of which is secured to her sole and separate use by a marriage settlement, to pay over to her husband and guardian such portion of the income as may be reasonable, to aid in her support.

BILL IN EQUITY by the husband of an insane woman, against the trustee under their marriage settlement, to obtain an order for a contribution from the income of the trust property secured to her sole and separate use, to aid in her support.

In November 1860, upon a suggestion made in behalf of the wife, and after argument, the full court ordered a guardian *ad litem* to be appointed for her, who afterwards filed an answer, and the case was submitted upon the following agreed facts:

By an ante-nuptial agreement executed at Charleston, South Carolina, on the 11th of December 1844, the income of certain property belonging to Juliane Monefeldt was secured to her sole and separate use, and William S. Monefeldt made the trustee thereof; and she and the plaintiff were shortly afterwards married, and lived together in Massachusetts, and had one son, who is now fifteen years old. Mrs. Davenport subsequently became insane, and, by the request of her friends and with the plaintiff's consent, was placed in the asylum at Bloomingdale, New York, where she now is, without prospect of recovery. The plaintiff has been appointed as her guardian in this commonwealth.

Immediately after the execution of the ante-nuptial agreement, William S. Monefeldt took possession of the property named therein, and held it, with the accumulations, until his death in 1857; and thereupon Henry Davenport was appointed in this commonwealth in his stead. The court of chancery in Charleston thereupon ordered the administrator of William S. Monefeldt to pay over the trust property to Henry Davenport, which was done in May and June 1858; the amount then being

$9611.02. William S. Monefeldt left real and personal estate, but no wife or children, and Juliane, as his sister and an heir at law, was entitled to one fourth part thereof; and said court of chancery, upon application for directions as to the disposition of said share, ordered the administrator to pay to the plaintiff her share of the personal estate, and to convey her share of the proceeds of the sale of the real estate to a trustee by a deed in which said share should be settled so that the income thereof should be equally divided between the plaintiff and Juliane during their joint lives, and, after the death of one of them, the whole income should be paid to the survivor for life, and, upon the death of the survivor, the whole settled estate should be paid and delivered to her heirs at law. Henry Davenport was appointed trustee under this decree, and received the proceeds of real estate sold, to the amount of $9251.12. The plaintiff also received the sum of $5467.40, as her share of the persona. estate.

The plaintiff is now a clergyman, with an annual salary of $800, and has maintained his wife and son to the present time, and he seeks by this bill to obtain the property held by Henry Davenport under the marriage settlement, or the income, or such part thereof as he may be entitled to, either as husband or guardian of Juliane.

*W. R. P. Washburn,* for the plaintiff, cited Shelford on Lunatics, 140, 155; *Kenney* v. *Udall,* 5 Johns. Ch. 480; *Sleech* v. *Thorington,* 2 Ves. Sen. 561; *Ex parte Whitbread,* 2 Meriv. 99; *Ex parte Blair,* 1 Myl. & Cr. 300; *Ex parte Willoughby,* 11 Paige, 257.

*H. Gray, Jr.,* for the guardian *ad litem* of Mrs. Davenport, cited *Shaw* v. *Thompson,* 16 Pick. 198; *Read* v. *Legard,* 6 Exch. 636; *Bertie* v. *Chesterfield,* 9 Mod. 31; S. C. 2 Eq. Cas. Ab. 152, pl. 15; 483, pl. 2; *Brodie* v. *Barry,* 2 Ves. & B. 39, 40; *Edwards* v. *Abrey,* 2 Phil. Ch. 37, 39; S. C. 2 Coop. temp. Cottenham, 177, 180, 184; Clancy on Husb. & Wife, (Amer. ed.) 351, 352; *Attorney General* v. *Parnther,* 3 Bro. C. C. 441; S. C. 4 Bro. C. C. 409; *Methodist Episcopal Church* v. *Jaques,* 1 Johns. Ch. 458; S. C. 3 Johns. Ch. 79, 87, 115; S. C. 17

Johns. 577 *& seq.; Peters* v. *Grote,* 7 Sim. 238; S. C. 2 Coop. temp. Cottenham, 192; *Nettleshipp* v. *Nettleshipp,* 10 Sim. 236; *Digby* v. *Howard,* 4 Sim. 588; S. C. 8 Bligh, N. R. 246, 257, 258, 260, 268, 270; S. C. 2 Cl. & Fin. 654, 655, 670, 677, 679; 2 Bright on Husb. & Wife, 18, 288–291, and cases cited; 2 Story on Eq. § 1375 *a;* Sugden on Powers, (8th ed.) 173; *Johnson* v. *Gallagher,* 4 Law Times N. S. 75–77, and cases cited; *Yale* v. *Dederer,* 18 N. Y. 265; S. C. 22 N. Y. 450; *Mayer* v. *Galluchat,* 6 Rich. Eq. 1; *Hall* v. *Faust,* 9 Rich. Eq. 301; *Sts.* 1845, *c.* 208; 1855, *c.* 304, §§ 8, 9; 1857, *c.* 249, § 5; Gen. Sts. *c.* 108, §§ 10, 27, 30; *Willard* v. *Eastham,* 15 Gray, .

CHAPMAN, J. It is not necessary in this case to determine how the principal sum secured to Mrs. Davenport by the indenture of December 11, 1844, is to be disposed of at her death. As to the income, we think it was appropriated to her sole and separate use and disposal. The language of the instrument is clear, and we do not understand that there is any controversy on this point. She had a right to dispose of it in any way that might minister to her comfort, or gratify her fancy, or even her whims, and was not obliged to appropriate any part of it in such a way as to relieve her husband from his obligation to support her and their children. But she is now insane, without any prospect of recovery, and has for a considerable time been in the asylum at Bloomingdale, in conformity with the desire and consent of her friends and her husband.

She is thus unable to exercise any discretion as to the disposition of the income; and unless some one else can exercise that discretion in her stead, no part of it can be used to minister to her comfort, but it must continue to accumulate to the time of her death, as it has done since July 1853, when she first became insane. Her husband has been appointed by the probate court as her guardian, and he seeks the direction of this court as a court of equity on the subject.

Her guardian *ad litem,* appointed by the court to protect her interests, contends that no part of the income of this fund ought to be applied to her support, because it is the duty of her husband to support her; and that the trustee should keep it as an

accumulating fund, to be used for her support in the contingency of her surviving her husband. The original fund, with its accumulations to the present time, amounts to about the sum of $10,000 ; and the income would not be quite sufficient to support her as she is at present supported.

We have no doubt that the position taken by the counsel of her guardian *ad litem,* that the husband has no claim, as her husband, to any part of the income to aid him in supporting her, is well maintained by the authorities cited. But her guardian has a right to ask a court of equity to exercise its discretion as to the disposition of the income, acting as her friend and in her stead ; and that discretion is to be exercised in a reasonable manner, taking into view all the circumstances of the case. And the court may order the income, or a portion thereof, to be appropriated for her support and comfort, as she would be likely to do if she were capable of acting. Her good and her probable wishes are to be solely regarded in the matter, because the fund is exclusively her own.

Her husband is a clergyman, now settled and receiving a salary of $800. He has also received from the estate of his wife's deceased brother the sum of $5467.40 in personal property, and receives one half the income of $9,251.12, which is in the hands of the trustee of his wife, the other half being hers. His whole income from all these sources, including his salary, is stated to be $1300 to $1400. The wife's half of the income is additional to her income from the trust fund, and the whole constitutes a fund sufficient to support her as she is now supported. They have one son, who is about fifteen years of age.

In consideration of all the circumstances of the case: that the husband is obliged to incur the expense of living in a manner suitable to his position as a parish minister ; that he ought to give the son a good education ; that he is obliged to provide for the superintendence of his household affairs, during the inability of his wife to perform such duties ; and that the income of the wife's estate, together with her rights in his property in case she shall survive him, will be likely to constitute an ample support for her during her life, the court are of opinion that

the whole burden of her support should not be left to him, but that a considerable part of it may reasonably be furnished from the income of the trust fund. And we have fixed upon the sum of four hundred dollars, to be paid by her trustee annually out of the income, towards the expense of her support, till the further order of the court. It is to be understood that this sum is only a partial provision for her, and that her husband is to make, at his own expense, such additional provision as to supply fully all her reasonable wants.